1

2

3

4

5

# UNITED STATES DISTRICT COURT

6

7

EASTERN DISTRICT OF CALIFORNIA

8

9

10

11

12

13

14

| | |
|---|---|
| ANDRE L. MURPHY, SR., | 1:05-cv-00186-AWI-TAG HC |
| Petitioner, | REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS |
| v. | |
| | (Doc. 12) |
| D.L. RUNNELS, Warden, | |
| Respondent. | |

15

## **PROCEDURAL HISTORY**

16        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

18        On September 30, 1999, Petitioner was convicted of assault by means of force likely to

19  produce great bodily injury, a violation of California  Penal Code § 245(a)(1).  The jury found true an

20  allegation that Petitioner had personally inflicted great bodily injury under circumstances involving

21  domestic violence, in violation of Penal Code § 12022.7.  The trial court found that Petitioner had

22  suffered two prior serious felony convictions within the meaning of Penal Code § 667, subdivision

23  (a).  Petitioner was sentenced to serve an indeterminate prison sentence of twenty-five years to life,

24  plus a consecutive determinate term of fourteen years on the enhancements.  (See Lodged

25  Documents ("LD"), Doc. 1).

26        Petitioner appealed his conviction and sentence to the California Court of Appeal, Fifth

27  Appellate District ("5th DCA"), which affirmed the judgment on October 17, 2000.  (LD, Doc. 2).

28  Petitioner did not thereafter file a petition for review in the California Supreme Court.

1       During the pendency of his appeal in the 5th DCA, Petitioner filed two petitions for collateral

2   review in the California state courts.  On May 2, 2000, in Fresno County Superior Court case number

3   651225-5, Petitioner sought habeas relief that was denied as "not warranted while petitioner's appeal

4   is pending before the Fifth District Court of Appeal." (LD, Doc. 3).  On August 18, 2000, Petitioner

5   filed a habeas petition in the 5th DCA, claiming only that the respondent in his pending appeal had

6   not yet filed a Reply Brief "nor showed any just cause thereof." (LD, Doc. 4, p. 3).  In his Proof of

7   Service by Mail, Petitioner labeled the habeas petition, which was filed on a pre-printed habeas

8   corpus petition form, as a "Request for Motion for Default." (Id. at p. 7).   The 5th DCA denied this

9   petition in the opinion affirming his conviction on October 17, 2000.  (LD, Docs. 2, 4).[1]

10      On January 17, 2002, Petitioner filed a federal petition in this Court, case number 1:02-cv-

11  05079-AWI-SMS, raising claims of ineffective assistance of trial and appellate counsel,

12  improprieties in jury selection, and challenges to his Three Strikes' sentence.  (Case No. 1:02-cv-

13  05079-AWI-SMS, Doc. 1).  On May 10, 2002, the Magistrate Judge issued Findings and

14  Recommendations to dismiss the petition because it contained unexhausted claims.  (Id., Doc. 6).

15  On June 26, 2002, the District Court adopted the Magistrate Judge's Findings and Recommendations

16  and entered judgment dismissing the petition without prejudice.  (Id., Doc. 8).

17      On March 21, 2003, Petitioner filed his third and final state habeas petition--and his first

18  *post-conviction* petition--in the California Supreme Court in case number S114475.  (LD, Doc. 5).

19  On November 12, 2003, the California Supreme Court denied the petition without comment.

20  (LD, Doc. 6).  The instant federal petition for writ of habeas corpus was filed on February 9, 2005.

21  (Doc. 1.)

22  ///

23  ///

24

25      [1]In his direct appeal, Petitioner's appellate counsel had filed a brief pursuant to People v. Wende, 25 Cal.3d 436
26  (1979), contending that she could find no viable appellate issues and requesting that the 5th DCA independently review the
    record for any such errors. (LD, Doc. 2, p. 2).  In denying Petitioner's habeas petition, the 5th DCA noted that Petitioner's
27  grounds for the petition appeared to be that Respondent was subject to default because he had not filed a "Reply" brief. (Id.
    at p. 11). As the 5th  DCA pointed out, Respondent was not required to file such a brief under California Rules of Court, nor,
28  as a practical matter would it have made sense to do so since Petitioner's own counsel had not identified any appellate issues
    to raise in the 5th DCA.

1                                              **DISCUSSION**

2          A.  Procedural Grounds for Motion to Dismiss

3          On June 14, 2005, Petitioner filed an amended petition.  (Doc. 8).  On December 27, 2005,

4    the Court ordered Respondent to file an answer.  (Doc. 9).  On February 24, 2006, Respondent filed

5    the instant Motion to Dismiss the petition as being filed outside the one-year limitations period

6    prescribed by 28 U.S.C. § 2244(d)(1).  (Doc. 12).  Rule 4 of the Rules Governing Section 2254

7    Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition

8    and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ."

9    Rule 4 of the Rules Governing Section 2254 Cases.

10         The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if

11   the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

12   state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using

13   Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis,

14   874 F.2d 599, 602-603 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to

15   dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal.

16   1982) (same).  Thus, a respondent can file a motion to dismiss after the Court orders a response, and

17   the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n.

18   12.

19         In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C.

20   2244(d)(1)'s one-year limitation period.  Because Respondent's Motion to Dismiss is similar in

21   procedural standing to a motion to dismiss for failure to exhaust state remedies or for state

22   procedural default and Respondent has not yet filed a formal answer, the Court will review

23   Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

24         B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

25         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

26   1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

27   corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997);

28   Jeffries v. Wood, 114 F.3d 1484, 1499-1500 (9th Cir. 1997) ("justice and judicial economy are better

1   served by applying the Act to cases filed after the enactment date"), <u>overruled on other grounds by</u>

2   <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059 (1997).  The instant petition was filed on February 9,

3   2005, and thus, it is subject to the provisions of the AEDPA.

4          The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal

5   petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d)

6   reads:

7          (1)  A 1-year period of limitation shall apply to an application for a writ of
    habeas corpus by a person in custody pursuant to the judgment of a State court.  The
8   limitation period shall run from the latest of –

9          (A)  the date on which the judgment became final by the conclusion of
    direct review or the expiration of the time for seeking such review;
10

11         (B)  the date on which the impediment to filing an application created by
    State action in violation of the Constitution or laws of the United States is removed,
    if the applicant was prevented from filing by such State action;
12

13         (C)  the date on which the constitutional right asserted was initially
    recognized by the Supreme Court, if the right has been newly recognized by the
    Supreme Court and made retroactively applicable to cases on collateral review; or
14

15         (D)  the date on which the factual predicate of the claim or claims
    presented could have been discovered through the exercise of due diligence.

16         (2) The time during which a properly filed application for State post-
    conviction or other collateral review with respect to the pertinent judgment or claim
17  is pending shall not be counted toward any period of limitation under this
    subsection.
18

    28 U.S.C. § 2244(d).
19
           In most cases, the limitation period begins running on the date that the petitioner's direct
20
    review became final.  Here, Petitioner was convicted on September 30, 1999, and timely filed his
21
    notice of appeal in the 5th DCA.  The California Court of Appeal affirmed Petitioner's conviction on
22
    October 17, 2000.  Petitioner did not file a petition for review in the California Supreme Court.  In
23
    California, if a petitioner does not seek review of the intermediate state appellate court decision, a
24
    conviction becomes final forty days after the California Court of Appeal files its opinion.  <u>See</u> Cal.
25
    Rules of Court, rules 24(a), 28(b), 45(a); Cal. Civ. Proc. Code, sec. 12a; <u>Smith v. Duncan</u>, 297 F.3d
26
    809, 813 (9th Cir. 2002).  There is no tolling pending issuance of the remittitur.  <u>Wixom v.</u>
27
    <u>Washington</u>, 264 F.3d 894, 897 (9th Cir. 2001)(tolling does not continue until issuance of the
28

1    mandate under Washington law because the mandate is not a decision terminating review); White v.

2    Klitzkie, 281 F.3d 920, 924, n. 4 (9th Cir. 2002)(entry of mandate under Guam law does not extend

3    tolling); accord Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003)(finality occurs with expiration of

4    time for seeking further direct review and not later issuance of mandate).  Moreover, the ninety-day

5    time period normally tolled for filing a petition for writ of certiorari in the United States Supreme

6    Court is not available if the petitioner fails to seek review on direct appeal to the California Supreme

7    Court.  See Smith v. Duncan, 297 F.3d at 813.

8         As mentioned, the 5th DCA issued its opinion on October 17, 2000.  Petitioner was entitled

9    to an additional forty days until the decision became final on November 26, 2000.  Under the

10   AEDPA, the one-year period commenced the following day, on November 27, 2000, and Petitioner

11   had one year thereafter, or until November 27, 2001, within which to file his federal petition.  The

12   instant petition was not filed until February 9, 2005, over three years after the one-year limitation

13   period had expired.  Thus, absent applicable statutory or equitable tolling, the petition is untimely

14   and must be dismissed.

15        C.  Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

16        Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

17   for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

18   pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2). In

19   Nino v. Galaza, the Ninth Circuit held that the "statute of limitations is tolled from the time the first

20   state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral

21   challenge."[2]  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999); see also Taylor v. Lee, 186 F.3d

22   557 (4th Cir. 1999); Barnett v. Lemaster, 167 F.3d 1321, 1323 (10th Cir. 1999).  The Ninth Circuit

23   reasoned that tolling the limitations period during the time a petitioner is preparing his petition to file

24

25        [2]In California, the Supreme Court, intermediate Courts of Appeal, and Superior Courts all have original habeas
26   corpus jurisdiction. See Nino 183 F.3d at 1006, n. 2 (9th Cir. 1999).  Although a Superior Court order denying habeas corpus
     relief is non-appealable, a state prisoner may file a new habeas corpus petition in the Court of Appeal. Id.  If the Court of
27   Appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review, or may
     instead file an original habeas petition in the Supreme Court. See, id.

28

1   at the next appellate level reinforces the need to present all claims to the state courts first and will

2   prevent the premature filing of federal petitions out of concern that the limitation period will end

3   before all claims can be presented to the state supreme court.  Nino, 183 F.3d at 1005.  However, the

4   limitations period is not tolled for the time such an application is pending in federal court.  Duncan

5   v. Walker, 533 U.S. 167, 181, 121 S.Ct. 2120 (2001).

6          Petitioner's first and second state habeas petitions, filed respectively in Fresno County

7   Superior Court and the 5th DCA, were *both* filed and denied *before the one-year period of*

8   *limitations had commenced* on November 27, 2000.  Since the one-year period would not even

9   commence until Petitioner's appeal became final, see 28 U.S.C. § 2244(d)(1), Petitioner's two

10  collateral actions that were filed and terminated *prior to* the commencement of the limitations period

11  could have no tolling consequences.  Put another way, the first two state petitions could not toll a

12  limitations period that had not started to run.

13         By contrast, the third state petition, filed on March 21, 2003, two years and five months after

14  Petitioner's conviction became final, was filed *after* the one-year period had already expired.  Thus,

15  it too had no tolling effect.  Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000) (Petitioner is not

16  entitled to tolling where the limitations period has already run prior to filing state habeas

17  proceedings); see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.2000)(same); Jackson v.

18  Dormire, 180 F.3d 919, 920 (9th Cir. 1999)(petitioner fails to exhaust claims raised in state habeas

19  corpus filed after expiration of the one-year limitations period).

20         Even had the limitations period not already expired, however, Petitioner's last state petition

21  was untimely and was not entitled to statutory tolling.  A delay of almost two and one-half years

22  cannot be justified as "timely" under Nino, 183 F.3d 1003, and Evans v. Chavis, ___U.S.___, 126

23  S.Ct. 846 (2006).   As explained previously, in Nino, the Ninth Circuit held that the statutory tolling

24  commences upon the filing of the first state habeas petition after the judgment becomes final until

25  the final collateral challenge is denied.  Nino, 183 F.3d at 1006.  The one-year limitations period

26  continues to run, however, from the time the judgment becomes final until the filing of the first post-

27  conviction state habeas petition.  Id. at 1006, 1007.  Thus, the one-year period expired on November

28  27, 2001, one year and five months *before* Petitioner would have been entitled to statutory tolling by

1   virtue of his filing a state habeas petition in the California Supreme Court.  Id.

2          Moreover, Petitioner's unexcused delay in filing his lone post-conviction state habeas

3   petition precludes that petition from being entitled to statutory tolling because it was not "properly

4   filed" under the AEDPA.  In Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134 (2002), the Supreme

5   Court, addressing a four and one-half month delay between a state court of appeal denial of a habeas

6   petition and the filing of a petition in the California Supreme Court, rejected the Ninth Circuit's

7   reliance on language in the state supreme court's ruling as a "bellwether" that the state court's denial

8   had addressed the merits, thus implicitly indicating that the was petition timely:

9          "Given the variety of reasons why the California Supreme Court may have included
           the words 'on the merits,' those words cannot by themselves indicate that the
10         petition was timely. And the Ninth Circuit's apparent willingness to take such words
           as an absolute bellwether risks the tolling of the federal limitations period even
11         when it is highly likely that the prisoner failed to seek timely review in the state
           appellate courts.... The Ninth Circuit's rule consequently threatens to undermine the
12         statutory purpose of encouraging prompt filings in federal court in order to protect
           the federal system from being forced to hear stale claims."
13

14
   Saffold, 536 U.S. at 226. (Citations omitted.)  The Supreme Court emphasized that only a "timely"
15
   appeal tolls AEDPA's statute of limitations period, and that "unreasonable" delays are not "timely."
16
17  Saffold, 536 U.S. at 214.

18         The Supreme Court recently clarified its view of unreasonable state court delays in Evans v.

19  Chavis,  126 S.Ct. 846, holding that, when the state court denies the habeas petition without any

20  explanation or indication as to timeliness, federal district courts must conduct their own inquiries
21
    regarding whether the state habeas petitions were filed within a "reasonable" time.  By contrast,
22
    where there is a "clear indication that a particular request for appellate review was timely or
23
24  untimely," there is no need to conduct such an independent examination.  Evans, 126 S.Ct. at 852.

25         Here, the California Supreme Court denied Petitioner's state petition without comment; thus,
26
    this Court must conduct its own inquiry into whether the petition was timely.  From the undisputed
27
    facts discussed above, it is patent that Petitioner's two and one-half year delay in filing his first
28

post-conviction habeas petition in the California Supreme Court was excessive and unreasonable. Given the United States Supreme Court's holdings in Evans and Carey, the Court must find that the last state court habeas petition, filed over two years after Petitioner's conviction became final, was not "properly filed" within the meaning of the AEDPA and thus is not entitled to statutory tolling. See Evans, 126 S.Ct. at 848; Carey, 536 U.S. at 222-223.

Finally, *even if* the limitations period had not already expired before the last state petition was filed, and *even if* the last state petition had been entitled to statutory tolling during its pendency, Petitioner *still* waited another fifteen months after that petition was denied before filing the instant petition.  Thus, even assuming, arguendo, that the last state petition was "properly filed" and thus entitled to statutory tolling under Evans, the one-year limitations period nevertheless expired *after* the California Supreme Court denied the state habeas petition and *before* the instant petition was filed.

By the Court's calculations, Petitioner is untimely by a minimum of two years and eight months (excluding the time during which his last state petition was pending), and by a maximum of three years and four months (including the time during which the last petition was pending).  Unless Petitioner is entitled to equitable tolling, therefore, the instant petition must be dismissed as untimely.

D.  Equitable Tolling

The limitations period is subject to equitable tolling if "extraordinary circumstances beyond a prisoner's control" have made it impossible for the petition to be filed on time. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)(internal quotation marks and citations omitted); Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds by Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), itself abrogated on

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

other grounds by Woodford v. Garceau, 538 U.S. 202, 123 S.Ct. 1398 (2003)(noting that

"[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if

'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on

time").  "When external forces, rather than a petitioner's lack of diligence, account for the failure to

file a timely claim, equitable tolling of the statute of limitations may be appropriate."  Lott v.

Mueller, 304 F.3d 918, 922 (9th Cir. 2002) (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir.

1999)).

In order to establish equitable tolling, a prisoner must demonstrate that "extraordinary

circumstances beyond [his] control" made it "impossible to file a petition on time." (Beeler), 128

F.3d at 1288.  In Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that

a petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause

of his untimeliness."  The Ninth Circuit reaffirmed this rule in Espinoza-Matthews v. California,

432 F.3d 1021, 1026 (9th Cir. 2005),  noting that the determination vis-a-vis equitable tolling is

"highly fact-dependent" and that a petitioner "bears the burden of showing that equitable tolling is

appropriate."  Id.  The Ninth Circuit also noted the United States Supreme Court's decision in Pace

v. DiGuglielmo, 544 U.S.408, 418, 125 S.Ct. 1807 (2005), which framed the equitable tolling

standard "in less absolute terms":

> "Generally, a litigant seeking equitable tolling bears the burden of establishing two
> elements: (1) that he has been pursuing his rights diligently, and (2) that some
> extraordinary circumstance stood in his way."

Espinoza-Matthews, 432 F.3d at 1026, n. 5, quoting Pace, 125 S.Ct. at 418.  The Ninth Circuit

declined to decide whether Pace had "lowered the bar somewhat" because the Ninth Circuit

concluded that petitioner had met the "more demanding" articulation found in the Ninth Circuit case

law.  Espinoza-Matthews, 432 F.3d at 1027.

U.S. District Court
E. D. California

9

1    Here, Petitioner maintains that he is entitled to a total of approximately thirty-four months of

2  equitable tolling.  (Doc. 15, pp. 3-4).  Petitioner bases this conclusion on his assertions that "28-30"

3
4  months were tolled between October 17, 2000 and November 12, 2003 for pendency of his state and

5  federal habeas petitions, transfers to other prisons, lockdowns, and lack of access to the prison

6  library; 31 days were tolled as a result of an "orientation" period after his transfer on an undisclosed

7  date to High Desert State Prison; and 98 days were tolled between September 8, 2004 and December

8
9  17, 2004 due to another prison lockdown.  (Id.).

10    Contrary to Petitioner's claims, however, he is not entitled to equitable tolling for prison

11  lockdowns.  In general, unpredictable lockdowns or library closures do not constitute extraordinary

12  circumstances warranting equitable tolling.  See United States v. Van Poyck, 980 F.Supp. 1108,

13  1111 (C.D. Cal.1997) (inability to secure copies of transcripts from court reporters and lockdowns at

14
15  prison lasting several days and allegedly eliminating access to law library were not "extraordinary

16  circumstances" and did not equitably toll one-year statute of limitations).

17    As in Van Poyck, Petitioner here has failed to demonstrate that the lockdowns he

18  experienced, and the resulting limited law library access, substantially interfered with the entire year

19
20  Petitioner had to file his federal petition.  Petitioner's indigent status, his limited legal knowledge,

21  and the difficulties and disruptions he encountered as a result of intermittent prison lockdowns are

22  conditions of prison life that are no different than those experienced by the vast majority of

23  incarcerated prisoners attempting to file petitions for writ of habeas corpus.  By definition, therefore,

24  such circumstances, in themselves, are not "extraordinary" and do not justify equitable tolling.  See

25  Van Poyck, 980 F.Supp. at 1111 (brief security lockdowns cannot be characterized as "extraordinary

26  circumstances").

27  ///

28

U.S. District Court
E. D. California

10

1    Petitioner articulates no specific prejudice that inured uniquely to him as a result of the

2   prison's lockdown policies nor does he establish a "but-for" causative relationship between the

3   unspecified periods he claims to have been under lockdown and his failure to file this petition in a

4   timely manner.  Thus, Petitioner has not met his burden of showing "extraordinary circumstances"

5   entitling him to equitable tolling of the limitations period on this basis. See Van Poyck, 980 F.Supp.

6   at 1111; see also Galaz v. Harrison, 2006 WL 768813, *5 (E.D. Cal. Mar. 27, 2006)(38 day delay

7   due to prison lockdown not entitled to equitable tolling); Chavez v. Henry, 2006 WL 1875442, *6

8   (E.D. Cal. July 3, 2006)(sporadic lockdowns not entitled to equitable tolling); Potts v. Giurbino,

9   2006 WL 1377105, *5 (E.D. Cal. May 18, 2006)(unpredictable lockdowns and library closures do

10  not constitute extraordinary circumstances warranting equitable tolling); Atkins v. Harris, 1999 WL

11  13719, *2 (N.D.Cal. Jan.7, 1999) ("lockdowns, restricted library access and transfers do not

12  constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations.

13  Prisoners familiar with the routine restrictions of prison life must take such matters into account

14  when calculating when to file a federal [habeas] petition.... Petitioner's alleged lack of legal

15  sophistication also does not excuse the delay."); Giraldes v. Ramirez-Palmer, 1998 WL 775085, *2

16  (N. D.Cal.1998) (holding that prison lockdowns do not constitute extraordinary circumstances

17  warranting equitable tolling).

18        Nor is Petitioner entitled to tolling during the pendency of his first federal petition.  The

19  limitations period is not tolled for the time such an application is pending in federal court. Duncan

20  v. Walker, 533 U.S. at 181-182.

21        Finally, Petitioner is not entitled to tolling for disruptions caused by transfers between prisons

22  and any subsequent lack of access to his files.  In Lott, the Ninth Circuit concluded that, if

23  established, denying a petitioner access to his legal files during two temporary transfers that lasted

eighty-two days would "appear to satisfy the 'extraordinary circumstances' requirement for equitable tolling." Lott, 304 F.3d at 924.  In so holding, the Court noted that a "temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation."  304 F.3d at 925 (quoting Vigliotto v. Terry, 873 F.2d 1201, 1202-1203 (9th Cir. 1989)(a three day deprivation does not rise to constitutional proportions).

In contrast to Lott, Petitioner has not alleged any actual deprivation of access to his files; rather, he has simply contended that the "orientation" program in which he was required to participate after his transfer to High Desert State Prison and other unspecified transfers justify equitable tolling.  However, Petitioner's conclusory assertions allege no facts that would support a finding that either the orientation program or the prison transfers themselves adversely affected his ability to prepare a federal petition, and thus such events, which are routine within the California Department of Corrections, cannot support a conclusion that Petitioner encountered "extraordinary circumstances" beyond his control.  See (Beeler), 128 F.3d at 1288.

Moreover, as mentioned, equitable tolling applies only where a prisoner has diligently pursued claims, but has in some "extraordinary way" been prevented from asserting his rights.  Thus, in addition to considering whether circumstances prevented Petitioner in some extraordinary way from timely filing his petition, the Court must also consider Petitioner's diligence in pursuing his claims.  Petitioner himself, in his Opposition to the Motion to Dismiss, does not dispute the existence of the extensive delays discussed above, but instead claims they are due not to a lack of diligence but to a combination of circumstances involving prison lock-downs, transfers between prisons, and the pendency of his various habeas corpus petitions in state and federal court.

Ultimately, however Petitioner provides no acceptable explanations for why he waited over two years from the date his conviction became final to file his first state post-conviction habeas

petition.  Nor has Petitioner provided an acceptable explanation for why he waited yet another fifteen months after that state petition was denied before filing the instant petition.  All of the grounds raised in the instant petition were known to Petitioner when the California Supreme Court denied his habeas petition.  No additional research or analysis was required to complete the habeas corpus form and file it with the Clerk of the Court.  The only possible finding the Court can make under these circumstances is that Petitioner was dilatory.  Thus, the Court concludes that Petitioner has not shown due diligence.  Accordingly, for this additional reason, he is not entitled to equitable tolling. See Espinoza-Matthews, 432 F.3d at 1026, n. 5.

Because Petitioner is not entitled to either statutory or equitable tolling, the instant petition is not timely under AEDPA and thus should be dismissed with prejudice.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that Respondent's Motion to Dismiss (Doc. 12), be GRANTED and the amended habeas corpus petition (Doc. 8), be DISMISSED for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one-year limitation period.

This Report and Recommendation is submitted to the Honorable Anthony W. Ishii, the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fifteen (15) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation."  Replies to the objections shall be served and filed within five (5) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified

1   time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

2   Cir. 1991).

3

4

5   IT IS SO ORDERED.

6   Dated:  **August 25, 2006**                                        **/s/ Theresa A. Goldner**
    **j6eb3d**                                              UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court

E. D. California